UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 16-257-02 (DWF/TNL)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

CHABAPRAI BOONLUEA,
a/k/a Lily,
a/k/a Ploy,
a/k/a Linda,

        Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and defendant Chabaprai Boonluea (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges.** The defendant agrees to plead guilty to Count 1 of the Superseding Indictment, which charges the defendant with Conspiracy To Commit Sex Trafficking, in violation of Title 18, United States Code, Section 1594(c), and Count 6 of the Superseding Indictment, which charges the defendant with Conspiracy To Engage in Money Laundering, in violation of Title 18, United States Code, Section 1956(h). The defendant fully

1



understands the nature and elements of the crimes with which she has been charged. At the time of sentencing, the government agrees to move to dismiss the remaining counts of the Superseding Indictment against the defendant.

2. **Factual Basis.** The defendant is pleading guilty because she is in fact guilty of Count 1 and Count 6 of the Superseding Indictment. In pleading guilty, the defendant admits the following facts along with those in the Superseding Indictment and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

The defendant was a part of a large-scale international sex trafficking organization that conspired to make money, between at least 2009 and 2016, by arranging for Thai women (the "victims") to travel from Thailand to the United States to engage in innumerable commercial sex acts. The organization further engaged in widespread visa fraud in order to transport the victims to the United States.

Once in the United States, the victims would travel to various states, including Minnesota, to stay in "houses of prostitution" (apartments, houses, and/or hotels) where they would be required to perform commercial sex acts. The victims performed these sex acts to work off a "bondage debt." When members of the conspiracy in Thailand recruited the victims, who were typically from impoverished backgrounds, the victims were required to enter

into a debt bondage contract to pay for their visas and travel to the United States. The bondage debt was typically between $40,000 and $60,000 and far exceeded the actual expenses incurred by the trafficker. Until they paid off their exorbitant bondage debt, the victims were effectively "owned" by the organization.

The defendant's involvement with the organization ranged from 2009 through 2016. The defendant began as a victim. The defendant was recruited by the organization in early 2009 in Thailand. The defendant entered into a bondage debt of $55,000, which she owed to traffickers in the organization. At the direction of the organization, the defendant committed visa fraud in Thailand, which included entering into a fraudulent marriage in Thailand arranged by the organization. As a victim, the defendant was trafficked throughout the United States, including to Minnesota.

After the defendant paid off her bondage debt, she continued to work for the organization. Initially, the defendant acted as a facilitator for the organization, including in Minnesota. As a facilitator, the defendant would coordinate with various other members of the criminal organization, including traffickers in Thailand, to assist with the day-to-day operations of the trafficking organization in Minnesota, including the advertising and scheduling of commercial sex acts. The defendant knew that the victims of the criminal organization, including victims sent to Minnesota, owed the bondage

debt to the criminal organization and that they were required to work for the criminal organization by engaging in commercial sex acts until they paid off their bondage debt.

Over time, the defendant rose to become a "house boss" with the organization, opening a house of prostitution in Atlanta, Georgia. As a house boss, the defendant ran the day-to-day operations in Atlanta, including advertising the trafficking victims for commercial sex acts (or "dates"), procuring and maintaining the houses of prostitution, and scheduling sex buyers (or "Johns"). As a house boss, the defendant continued to coordinate with other members of the sex trafficking organization, including the traffickers and with other house bosses to facilitate the travel of the victims across the United States. In return for her service as a house boss, the defendant took a significant portion (she received 20% and another 20% went to the other house boss in Atlanta) of the cash the victims received from each commercial sex act.

The defendant also engaged in money laundering activities and conspired with other members of the criminal organization to engage in money laundering activities, including to launder the illegal proceeds of the criminal organization from the United States to Thailand. Specifically, as set forth in Count 6 of the Superseding Indictment, the defendant conspired with members of the criminal organization, including her husband defendant Andrew

Flanigan, to conduct financial transactions affecting foreign and interstate commerce where the purpose of the transactions was (1) to conceal and disguise the nature, location, source, ownership and control of the money, which the defendant knew was derived from illegal commercial sex acts committed in violation of Title 18, United States Code, Sections 2421 and 1591, and (2) to further promote the same illegal commercial sex activities for the benefit of the criminal organization. This included depositing money earned by the victims from the commercial sex acts into various bank accounts throughout the United States and assisting in the movement of that money to bank accounts in Thailand.

The defendant knowingly and voluntarily participated in the criminal conspiracy to traffic Thai women for commercial sex and to launder the money from that commercial sex. The defendant knew that the activity was jointly undertaken and all of the proceeds generated were reasonably foreseeable.

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file pre-trial motions in this case.

4. **Statutory Penalties**. The defendant understands that Count 1 of the Superseding Indictment (Conspiracy To Commit Sex Trafficking, in

violation of Title 18, United States Code, Sections 1591(a), 1591(b)(1), and 1594(c)) carries the following maximum statutory penalties:

    a. a maximum of life imprisonment;

    b. a supervised release term of at least 5 years up to life;

    c. a maximum fine of $250,000;

    d. $5,000 to the Domestic Trafficking Victims' Fund;

    e. mandatory restitution in an amount to be determined by the Court; and

    f. a mandatory special assessment of $100.

The defendant understands that Count 6 of the Superseding Indictment (Conspiracy to Engage in Money Laundering, in violation of Title 18, United States Code, Section 1956(h)) carries the following maximum statutory penalties:

    a. a maximum of 20 years in prison;

    b. a maximum supervised release term of 3 years;

    c. a maximum fine of $500,000 or twice the value of the property involved in the transaction, whichever is greater;

    d. mandatory restitution in an amount to be determined by the Court; and

    e. a mandatory special assessment of $100.

5. **Revocation of Supervised Release.** The defendant understands that if she were to violate any condition of supervised release, the

defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

6. **Guidelines Calculations.** The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations:

**COUNT 1: Conspiracy To Commit Sex Trafficking**

    a.     Base Offense Level. The defendant agrees there were at least six victims of the sex trafficking conspiracy. As to each victim, the parties agree that the base offense level is **34**. U.S.S.G. §§ 1B1.2(d), 2G1.1(a)(1), 2G1.1(d)(1), and 2X1.1(a).

    b.     Specific Offense Characteristics. The parties agree that no specific offense characteristics apply.

    c.     Chapter 3 Adjustments. The parties agree that the offense level should be increased by **2** levels as the defendant knew or should have known that a victim of the offense was a vulnerable victim. U.S.S.G. § 3A1.1(b)(1). The parties agree that other than acceptance of responsibility, no other Chapter 3 adjustments apply.

**COUNT 6: Conspiracy To Commit Money Laundering**

    a.     Guidelines Range. The parties agree that the base offense level is **34**, which is the offense level for the underlying

       offense the defendant committed from which the laundered funds were derived. U.S.S.G. §§ 2S1.1(a)(1) and 2X1.1(c).

b.    <u>Specific Offense Characteristics</u>. The parties agree that the offense level should be increased by **2** levels because the defendant was convicted under Title 18, United States Code, Section 1956. U.S.S.G. § 2S1.1(b)(2)(B). The parties agree that the offense level should be increased by **2** levels because the offense involved sophisticated laundering under U.S.S.G. § 2S1.1(b)(3). The parties agree that no other specific offense characteristics apply.

c.    <u>Chapter 3 Adjustments</u>. The parties agree that other than acceptance of responsibility, no other Chapter 3 adjustments apply to this Count.

**Grouping and Other Guidelines Considerations**

d.    <u>Grouping</u>. Count 6 is grouped with Count 1 pursuant to U.S.S.G. § 3D1.2(c). Because there were at least six victims in Count 1 with conduct equally as serious, a 5-level increase applies. U.S.S.G. § 3D1.4. The resulting offense level is **43**.

e.    <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of her intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing. The adjusted offense level is **40**.

  f. <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category **I**. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within her criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on her true criminal history category, and she will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

  g. <u>Guidelines Range</u>. If the adjusted offense level is **40**, and the criminal history category is **I**, the Sentencing Guidelines range is **292 to 365** months of imprisonment.

  h. <u>Fine Range</u>. If the adjusted offense level is **40**, the Sentencing Guidelines fine range is $50,000 to $500,000. U.S.S.G. § 5E1.2.

  i. <u>Supervised Release</u>. The Sentencing Guidelines require a term of supervised release of at least five years up to lifetime supervision. U.S.S.G. § 5D1.2(c).

  j. <u>Sentencing Recommendation and Departures</u>. The parties reserve the right to make a motion for departure(s) from the applicable Guidelines range and to oppose any such motion made by the opposing party. The parties reserve the right to argue for a sentence outside the applicable Guidelines range.

7. **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls

solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

8. **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to U.S.S.G. § 5E1.3. The defendant agrees that the $200 special assessment is due and payable at the time of sentencing.

9. **Restitution and Disclosure of Assets.** The defendant understands and agrees that the Mandatory Victim Restitution Act, Title 18, United States Code, Section 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of her crimes. The defendant agrees not to oppose the Court's entry of an order that she pay restitution to the United States. The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution and fines ordered by the

Court. The defendant agrees to complete a financial statement fully and truthfully before the date of sentencing.

10. **Forfeiture.** The defendant agrees to forfeit to the United States all property, real or personal, involved in, used or intended to be used to commit or facilitate the commission of Count 1 of the Superseding Indictment, and any property constituting or derived from any proceeds obtained, directly or indirectly, as a result of that offense. The defendant also agrees to forfeit any property, real or personal, involved in the commission of Count 6 of the Superseding Indictment and any property traceable thereto.

The defendant agrees to forfeit the following property, which was involved in and was used to facilitate the commission of Counts 1 and 6:

   a. A Samsung Camera; and

   b. A Samsung Galaxy with IMEI 351873053223231.

The defendant consents to entry of a money judgment forfeiture in the amount of $250,000, and agrees that the proceeds she obtained, directly or indirectly, and her interest in the property involved in Count 1 of the Superseding Indictment equals or exceeds that amount. The defendant also agrees that the amount of money involved in her money laundering activities in furtherance of Count 6 of the Superseding Indictment equals or exceeds $250,000.

The government reserves its right to seek the direct forfeiture of specific assets and substitute property pursuant to 21 U.S.C. § 853(p).

The defendant waives any defenses or challenges to this forfeiture sanction arising under the Constitution or Fed. R. Crim. P. 32.2 and agrees that she will not contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds. The defendant also waives her right to file a petition in any ancillary proceeding for property forfeited from any other defendant in this matter.

11. **Waiver of Trial Right.** The defendant understands that she has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial. The defendant understands that by pleading guilty she surrenders this right.

12. **Waivers of Appeal and Collateral Attack.** The defendant understands that 18 U.S.C. § 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this right, and in exchange for the concessions made by the United States in this plea agreement, the defendant hereby waives all rights conferred by 18 U.S.C. § 3742 to appeal the defendant's sentence. In addition, the defendant expressly waives the right to petition under 28 U.S.C. § 2255. However, the waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel. The defendant has discussed these rights

with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

13. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

14. **Collateral Consequences**. The defendant understands that pleading guilty may have consequences with respect to her immigration status, including removal or deportation. The defendant understands that no one, including her attorney, the Assistant United States Attorney or the District Court, can predict to a certainty the effect of her conviction on her immigration status. Regardless of any immigration consequences that may follow from her guilty plea, even automatic removal or deportation from the United States, the defendant still wishes to plead guilty as set forth in this agreement.

15. **Sex Offender Registration**. Defendant understands that by pleading guilty, defendant may be required to register as a sex offender upon her release from prison as a condition of her supervised release pursuant to 18 U.S.C. § 3583(d). Defendant also understands that independent of supervised release, she may be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout her life.

16. **Complete Agreement.** This, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the defendant.

GREGORY G. BROOKER
Acting United States Attorney

Date: June 21, 2017

BY: MELINDA A. WILLIAMS
JULIE E. ALLYN
LAURA M. PROVINZINO
Assistant United States Attorneys

Date: 06/21/2017

CHABAPRAI BOONLUEA
Defendant

Date: June 21, 2017

STEVEN WOLTER, Esq.
Counsel for Defendant